UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-528-BO

| | | |
|---|---|---|
| JONATHAN R. MEREDITH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JOSHUA STEIN, *Attorney General of the State of North Carolina, in his official capacity*; BOB SCHURMEIER, *Director of the North Carolina State Bureau of Investigation, in his official Capacity*; and MICHAEL D. WATERS, *District Attorney of Franklin County, North Carolina, in his official capacity*; | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the parties' motions for summary judgment. [DE 32, 34]. The matters have been fully briefed and are ripe for disposition. For the following reasons, defendants' motion for summary judgment [DE 34] is DENIED and plaintiff's motion for summary judgment [DE 32] is GRANTED.

BACKGROUND

In 2004, in the state of Washington, plaintiff pleaded guilty to misdemeanor "Communication with a Minor for Immoral Purposes." [DE 1, ¶ 9]; Wash. Rev. Code § 9.68A.090. Plaintiff was incarcerated for ninety days. *Id.* ¶ 14. After his release, plaintiff moved to North Carolina. *Id.* ¶ 17. He has resided continuously in North Carolina since 2004. *Id.* ¶ 41. When he moved to North Carolina, plaintiff reported to the sheriff's office in Person County, where he was then residing, and was told that he was not required to register as a sex offender in North Carolina. *Id.* ¶¶ 19–21.

In 2009, plaintiff moved to Wake County. *Id.* ¶ 42. In June 2017, thirteen years after plaintiff moved to North Carolina, a deputy in the sheriff's office in Wake County determined that plaintiff's Washington conviction was "substantially similar" to a reportable conviction under N.C. Gen. Stat. § 14-208.6(4)(c). *Id.* ¶¶ 43–44. The sheriff's office informed plaintiff that he was required to register as a sex offender in North Carolina or he would be subject to felony prosecution for failure to register. *Id.* ¶ 45. To avoid the threatened criminal prosecution, plaintiff registered as a sex offender. *Id.* ¶ 52. The sheriff's office forwarded plaintiff's registration to the North Carolina State Bureau of Investigation, which placed him on the state-wide sex offender registry. *Id.* ¶ 53. In December 2017, plaintiff was removed from the registry. [DE-13]. Currently, plaintiff resides in Franklin County with his wife and children. [DE 2-2].

Registered sex offenders face significant restrictions in their daily lives. *See, e.g.*, N.C. Gen. Stat. § 14-208.18(a)(3) (preventing registered sex offenders from going to libraries, arcades, amusement parks, recreation parks, and swimming pools). Failure to register when required to by law is a felony, and there is no procedure enabling sex offenders to challenge the registration determination. *Id.* § 14-208.11(a). Sex offenders are also subject to reporting requirements and random visitation by law enforcement. *Id.* §§ 14-208.9A, 14-208.14. The minimum registration period is ten years, but the standard period is thirty years. *Id.* § 14-208.12A.

In October 2017, after registering as a sex offender, plaintiff filed this lawsuit. [DE 1]. Plaintiff argues that the mechanism through which North Carolina places those convicted of out-of-state sex offenses on the sex offender registry violates his procedural due process rights under the Fourteenth Amendment of the Constitution. *Id.* ¶¶ 60–66. Plaintiff seeks declaratory and injunctive relief. [DE 1, p. 15–16]. In May 2018, this Court denied defendants' motion to dismiss. [DE 30]. In response, both plaintiff and defendants moved for summary judgment. [DE 32, 34].

DISCUSSION

I. Defendants' motion for summary judgment is denied.

Defendants argue that they are entitled to summary judgment for two reasons: because (1) plaintiff lacks standing to sue the collective defendants and (2) defendants are immune from suit under the Eleventh Amendment. [DE 34, p. 4]. The Court disagrees, finding that plaintiff has standing and the defendants are not immune. Thus, defendants' motion must be denied.

A motion for summary judgment may not be granted unless there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). In determining whether a genuine issue of material fact exists, a court must view the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). And "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

At the outset, the parties have both demonstrated the absence of a genuine issue of material fact. In their joint stipulations of fact, the parties agree that the Wake County Sheriff's Office's decision to require plaintiff to register as a sex offender was based on the determination that plaintiff's 2004 conviction in Washington was "substantially similar" to a reportable conviction in North Carolina. [DE 33-2, p. 1]. They further stipulated that this determination was made by a deputy in the sheriff's office, that the deputy had the authority to make that determination without consultation with the Wake County District Attorney's Office or the North Carolina Attorney General's Office, and that North Carolina law does not "require a court hearing or other process" prior to determining that a sex offender must register on the basis of substantial similarity. [DE 33-2, p. 2]. In fact, "[t]he process to determine whether an out-of-state conviction is 'substantially similar' to a North Carolina reportable conviction is not set out in any official statute, ordinance, regulation, or policy." *Id.* The parties also agreed that the North Carolina State Bureau of Investigation, in accordance with N.C. Gen. Stat. § 14-208.14, "compiles and keeps current a central statewide sex offender registry." [DE 33-2, p. 3]. There are no genuinely disputed issues of material fact. The questions that remain are purely legal and, as such, summary judgment is appropriate.

A. Standing

Defendants first argue that they are entitled to judgment as a matter of law because plaintiff lacks standing to bring his declaratory judgment claim against them. Defendants' argument mirrors one they previously made, unsuccessfully, in attempting to dismiss plaintiff's claims for lack of subject-matter jurisdiction. In particular, defendants argue that plaintiff cannot show that his injury is "fairly traceable" to them.

4

For standing under Article III, a plaintiff must demonstrate that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) and *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Defendants "do not concede that placement on the [sex offender registry] is itself an injury that would satisfy the first prong of standing," but argue that the injury cannot be traced to them and cannot be redressed in the present lawsuit. [DE 35, p. 4–5].

Defendants argue that they cannot be held responsible for plaintiff's injury because only the Wake County Sheriff's Office is responsible for determining whether plaintiff's out-of-state sex offense is "substantially similar" to a reportable conviction in North Carolina. But in advancing this argument, they misconstrue plaintiff's position. Plaintiff seeks not to remedy the fact that he was placed on the sex offender registry, but the fact that he could be placed on it again tomorrow, next month, or next year—without any process whatsoever, let alone adequate process under the Constitution. "Plaintiff seeks protection from the enforcement of criminal laws applicable solely to registrants." [DE 37, p. 3; DE 1, ¶ 16]. The injury that satisfies the first standing prong, then, is not the June 2017 incident, but the ongoing unpredictability of plaintiff's legal circumstances. Defendants rely on the fact that they are not *currently* requiring plaintiff to register as a sex offender to argue, in turn, that plaintiff lacks standing or his claims are moot; but North Carolina has not modified its procedures for determining whether an out-of-state offense is "substantially similar" and defendants have given no reason why plaintiff could not be required to register as a sex offender in North Carolina in the future.

Defendant Schurmeier, in his official capacity as Director of the North Carolina State Bureau of Investigation, is responsible for administering the sex offender registry. *See* N.C. Gen. Stat. § 14-208.14; N.C. Gen. Stat. § 143B-915. Defendant Stein, in his official capacity as North Carolina Attorney General, and defendant Waters, in his official capacity as District Attorney of Franklin County, are responsible for the criminal prosecution of individuals who fail to register as sex offenders. *See* N.C. Gen. Stat. § 114-11.6; N.C. Gen. Stat. §14-208.11. Thus, these defendants and their successors are precisely the parties to whom plaintiff's injury is "fairly traceable," and a favorable judicial decree directed to these defendants would remedy plaintiff's injury. As such, plaintiff has standing to bring his claims.

Additionally, defendants do not argue that plaintiff lacks standing to bring his claims for injunctive relief, believing those claims to have been mooted by plaintiff's removal from the sex offender registry. But defendants are mistaken, as the removal did not moot plaintiff's claims for injunctive relief. As such, plaintiff's claims for injunctive relief are justiciable, too.

Mootness and standing are related, yet distinct, concepts. *Friends of the Earth*, 528 U.S. at 189. A case is moot when there is no longer a case or controversy to be resolved by the court. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Defendants believe that because plaintiff is no longer on the sex offender registry, his claims for injunctive relief have been mooted. But "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). If it did, a defendant could freely engage in unconstitutional activity, as long as he took temporary breaks whenever a lawsuit was filed. *Id.* at 289 n.10; *Laidlaw*, 528 U.S. at 189. Because of this concern, a case is only mooted when "subsequent events [make] it absolutely clear that the allegedly wrongful behavior [can] not reasonably be expected to recur." *United States v.*

6

*Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). A defendant claiming its voluntary action makes a case moot bears a "formidable burden" in demonstrating this. *Laidlaw*, 528 U.S. at 189.

Defendants have not met their "formidable burden" of establishing that plaintiff cannot be placed on the sex offender registry again. This is not an archaic, vestigial law which is rarely enforced; rather, as seen by plaintiff's placement on the registry thirteen years after moving to North Carolina, the sheriff's office in the county where plaintiff resides, now or in the future, can make the determination to place plaintiff on it again. In making such a determination, the sheriff's office would afford plaintiff neither notice nor an opportunity to be heard. Defendants Stein and Waters have not shown that neither they nor their successors would prosecute plaintiff for a failure to register in the future. Defendant Schurmeier has not shown that he would not place plaintiff on the state-wide registry again in the future. North Carolina has not changed its procedures—that is to say, implemented any procedure at all—for determining whether out-of-state offenses are "substantially similar" to reportable North Carolina offenses. In fact, defendants disclaim any responsibility for determining whether plaintiff could be required to register as a sex offender in the future. [DE 35, p. 5–6]. Thus, defendants have not met their "formidable burden" of making it "absolutely clear" that plaintiff cannot "reasonably be expected" to register as a sex offender again in the future. *See Concentrated Phosphate Export Ass'n*, 393 U.S. at 203. Plaintiff's claims are not moot simply because defendants voluntarily and without explanation removed him from the sex offender registry.

Thus, plaintiff has satisfied the requirements of Article III, and has presented claims for declaratory and injunctive relief that are not moot and that he has standing to bring.

B. Immunity

7

Defendants next argue that they are entitled to Eleventh Amendment immunity. In particular, defendants argue that there is no "ongoing" constitutional violation as plaintiff does not currently face a "credible threat of prosecution." [DE 35, p. 7–8].

The doctrine of *Ex parte Young*, 209 U.S. 123, 159–60 (1908), provides an exception to Eleventh Amendment immunity where suit is brought against state officials and "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998). "[A] court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective'" to determine whether *Ex parte Young* applies. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citation omitted). "The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001), *cert. denied*, 535 U.S. 904 (2002).

A "credible threat of prosecution" may exist, and may thus make a pre-enforcement suit appropriate, even when the government has not affirmatively stated its intention to prosecute. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010); *see also Mobil Oil Corp. v. Attorney Gen. of Virginia*, 940 F.2d 73, 75–76 (4th Cir. 1991). Defendants rely on *Doe v. Duling*, 782 F.2d 1202 (4th Cir. 1986), where the Fourth Circuit found that a pre-enforcement privacy challenge to a nineteenth-century anti-fornication statute did not present an adequate case or controversy. Since, the Fourth Circuit has permitted pre-enforcement challenges in cases where the plaintiff had "an actual and well-founded fear" that the law would be enforced against them. *See, e.g., Mobil Oil*

*Corp.*, 940 F.2d at 76 (quoting *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)).

In this case, the threat of prosecution is not an empty one. Defendant Waters has stated that he "sees no reason to prosecute plaintiff because plaintiff is not required to register as a sex offender." [DE 35, p. 8]. But this is not sufficient to remove plaintiff's "actual and well-founded fear" of being required to register as a sex offender again and being prosecuted if he fails to register. The decision of whether or not to require plaintiff to register rests, at the moment, with the sheriff's office in Franklin County, where plaintiff now resides. If he moves to a different county, that county's sheriff, too, will be able to determine whether plaintiff's out-of-state offense is "substantially similar" to a reportable conviction in North Carolina. And again, as in June 2017, plaintiff will receive no notice and no opportunity to be heard prior to the determination that he must register. None of the defendants have disclaimed the authority to place plaintiff on the state-wide registry if he is forced to register, and none have disclaimed the authority to prosecute plaintiff if he is required to register but fails to do so. The injury which plaintiff complains of, the violation of his Fourteenth Amendment due process rights, is ongoing and he faces a "credible threat of prosecution." Plaintiff meets the first *Ex parte Young* requirement.

Defendants also argue, however, that plaintiff does not meet the second *Ex parte Young* requirement because he seeks retroactive relief. Again, defendants erroneously conclude that plaintiff's claims for injunctive relief are moot, and therefore address only the appropriateness of plaintiff's claim for declaratory judgment.

The *Ex parte Young* exception encompasses only suits for prospective relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984). Defendants argue, categorically and incorrectly, that "[a] declaratory judgment constitutes retrospective relief." [DE 35, p. 9]. While

9

there are certainly claims for declaratory judgment that *are* retroactive, and one example can be found in *Green v. Mansour*, 474 U.S. 64, 73 (1985), it is not *always* the case that claims for declaratory relief are retroactive. Each of the cases defendants cite deals with an alleged constitutional violation that has been in some way remedied, either through the repeal of a statute or the amendment of a procedure. No such change has been made to North Carolina's process for determining whether out-of-state offenses are "substantially similar" to reportable convictions in North Carolina. Accordingly, plaintiff's claim for a declaration that this process, through which he was required to register as a sex offender in June 2017 and might be required to register again, is constitutionally inadequate is a claim for purely prospective relief. It does not fall afoul of *Pennhurst*. Plaintiff's claims for injunctive relief are, similarly, prospective. Thus, plaintiff's claims fit squarely within the *Ex parte Young* exception, and defendants may not claim Eleventh Amendment immunity.

In their motion for summary judgment, defendants make no arguments concerning the merits of plaintiff's procedural due process claims. Because both of defendants' arguments, that plaintiff lacks standing to sue them and that they are immune from suit, are legally deficient, defendants' motion for summary judgment is denied.

II. Plaintiff's motion for summary judgment is granted.

Next, the Court turns to plaintiff's motion for summary judgment. Plaintiff argues that there are no genuine disputes as to any material facts and that he is entitled to judgment as a matter of law. The Court agrees, finding that North Carolina's process for requiring individuals who have committed out-of-state sex offenses to register as sex offenders in North Carolina (1) deprives plaintiff of a cognizable liberty interest and (2) the procedures protecting that interest were

10

constitutionally inadequate. Thus, plaintiff is entitled to judgment as a matter of law on his procedural due process claim, and his motion must be granted.

As discussed above, both parties have successfully established that there are no genuine disputes as to any material facts. The only question that remains, then, is whether plaintiff has established that his constitutional rights are being violated. Procedural due process is implicated when the state alters or extinguishes a previously recognized right or status. *Paul v. Davis*, 424 U.S. 693, 710–11 (1976). This is distinct from substantive due process, which is the principle that there are some government actions so unjustifiable that there is no process available that could validate them. *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 827 (4th Cir. 1995). By contrast, there are some actions that the state may take that, knowing that they affect recognized rights, provided there is adequate process to protect those interests. *Snider Intern. Corp. v. Town of Forest Heights, Md.*, 739 F.3d 120, 146 (4th Cir. 2014). These interests are necessarily less fundamental than those covered by substantive due process. *Sylvia Development Corp.*, 48 F.3d at 827. In weighing a procedural due process claim, a court must first determine "whether there exists a liberty or property interest which has been interfered with by the State" and, second, "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972) and *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

A. Protectable Right

As to the first procedural due process prong, plaintiff argues that "placement on the [sex offender] registry deprives the registrant of substantial liberty interests as a matter of state law." [DE 33, p. 6]. This is plainly true. Unlike individuals who are not placed on the sex offender registry, registrants must report to the sheriff's office every six months and confirm that the

11

information in their registration remains up-to-date. N.C. Gen. Stat. § 14-208.9A. This includes reporting changes in address, keeping their photographs accurate and updated, and disclosing "any new or different online identifiers." *Id.* The county sheriff may even visit registrants' homes to verify registration information. *Id.* Registrants face restrictions in where they may live, where they may work, and where they may spend their recreational time. N.C. Gen. Stat. §§ 14-208.16–19A. United States citizens have a protectable right not to be placed on the sex offender registry—not to have their legal status changed so abruptly and severely—without sufficient process.

B. Sufficient Process

Where there is no process, there can be no *due* process. The essential components of due process are prior notice and the opportunity to be heard. *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). In determining that an individual must register as a sex offender because his out-of-state conviction is "substantially similar" to a reportable conviction, North Carolina provides neither prior notice nor a hearing. In fact, North Carolina provides nothing at all. Rather, each county sheriff's office can decide unilaterally whether any out-of-state offense is "substantially similar" to any reportable North Carolina conviction. The sheriff's deputies responsible for making the determinations do not need to consult with legal counsel, even though substantial similarity has been described as a "question of law." *State v. Springle*, 781 S.E.2d 518, 522 (N.C. Ct. App. 2016). No evidentiary hearings are held. The registrants are given no opportunity to provide input. The substantial similarity determinations are final and result in individuals being forced to register within days or face felony prosecution; there is no opportunity to appeal. There is no statute, regulation, policy, or ordinance outlining the determination process, listing factors that are considered, or identifying who is responsible for making the determinations.

The substantial similarity determination is a complicated one. Plaintiff argues that "in every analogous context, North Carolina law requires that [the substantial similarity determination] be made by a judge in a formal evidentiary hearing." [DE 33, p. 8]. In determining "recidivist" status for the purposes of imposing satellite-based monitoring, substantial similarity must be determined by the North Carolina trial judge following the state's presentation of evidence. *State v. Springle*, 781 S.E.2d at 522. North Carolina trial judges must also determine "substantial similarity" for purposes of calculating prior offense history. *State v. Burgess*, 715 S.E.2d 867, 871 (N.C. Ct. App. 2011). Further, North Carolina is not the first state to vest the power to make substantial similarity determinations in sheriff's deputies, without further process, in violation of the Fourteenth Amendment. *See Creekmore v. Attorney General of Texas*, 341 F. Supp. 2d 648, 666 (E.D. Tex. 2004) (finding a due process violation where sheriff's deputy required registration based on a "substantially similar" offense under the Uniform Code of Military Justice).

At the motion to dismiss stage, defendants raised three arguments that the existing procedures are sufficient: first, that plaintiff received due process when originally convicted; second, that the availability of a declaratory judgment action provides due process; and third, that there is an effective post-registration removal process. [DE 15, p. 15–16]. The Court has already rejected each of these three arguments. [DE 30]. In sum, the due process that plaintiff received in Washington during his initial prosecution was not sufficient to protect him from the subsequent deprivation of liberty effected thirteen years after he moved to North Carolina, which could be readily repeated in the future. The ability to file a lawsuit in state court challenging the registration requirement does not provide sufficient process, either. And the mechanism provided in N.C. Gen. Stat. § 14-208.12A, permitting registrants to petition to have their registration requirement terminated after ten years and in specific circumstances, also does not provide sufficient process.

Thus, plaintiff has adequately demonstrated that North Carolina's process of determining whether out-of-state offenses are "substantially similar" to reportable convictions in North Carolina violates his procedural due process rights under the Fourteenth Amendment. Plaintiff possesses a protected liberty interest, was deprived of that interest without sufficient process, and might be deprived of that interest again in the near future.

III. Relief

A. Declaratory Judgment

"In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Court has concluded that this case presents an actual controversy within its jurisdiction. Accordingly, the Court has the discretionary power to issue a declaratory judgment.

For the reasons discussed above, and good cause appearing, the Court hereby DECLARES that North Carolina's current process of determining whether out-of-state offenses are "substantially similar" to reportable convictions in North Carolina violates plaintiff's procedural due process rights under the Fourteenth Amendment. This declaration shall remain in effect until and unless North Carolina modifies its process to afford plaintiff notice and the opportunity to be heard.

B. Injunctive Relief

To obtain a permanent injunction, the party seeking relief must establish that "(1) it has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126 (4th Cir. 2011). "The standard for a preliminary injunction is essentially the same as for a permanent

injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

Plaintiff has established the elements necessary for a permanent injunction. Placement on the sex offender registry without due process of law constitutes an irreparable injury, plaintiff's remedies at law are inadequate, the balance of hardships favors plaintiff, and the public interest would not be disserved by the injunction. Accordingly, plaintiff is hereby enjoined from:

(1) Placing plaintiff on the North Carolina Sex Offender Registry without first affording him prior notice and an opportunity to be heard; and

(2) Prosecuting plaintiff for any failure to comply with any North Carolina, federal, or other law or regulation applicable solely to registered sex offenders without first affording him prior notice and an opportunity to be heard on whether his previous out-of-state offense is "substantially similar" to a reportable North Carolina conviction.

## CONCLUSION

In sum, plaintiff has standing to bring his claims, none of which are moot, and defendants are not entitled to Eleventh Amendment immunity. Plaintiff is entitled to judgment as a matter of law that his procedural due process rights are being violated, given that he is not afforded either notice or the opportunity to be heard prior to the determination that he must register as a sex offender. For the above reasons, defendants' motion for summary judgment [DE 34] is DENIED and plaintiff's motion for summary judgment [DE 32] is GRANTED.

Is it hereby ORDERED, ADJUDGED, and DECREED that defendants, their successors, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice hereof are permanently ENJOINED and RESTRAINED from:

(1) Placing plaintiff on the North Carolina Sex Offender Registry without first affording him prior notice and an opportunity to be heard;

(2) Prosecuting plaintiff for any failure to comply with any North Carolina, federal, or other law or regulation applicable solely to registered sex offenders without first affording him prior notice and an opportunity to be heard on whether his previous out-of-state offense is "substantially similar" to a reportable North Carolina conviction.

Plaintiff shall recover of defendants his costs of action, if any, including reasonable attorneys' fees, under 42 U.S.C. § 1988. The Clerk is DIRECTED to enter judgment and close the case.

SO ORDERED, this 6 day of November, 2018.

Terrence W. Boyle
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE